UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:12-cr-110 |
| v. ) | |
| ) | *Collier / Lee* |
| TYRONE WALKER ) | |

**REPORT AND RECOMMENDATION**

Before the Court is the motion filed by Defendant Tyron Walker ("Defendant") seeking to suppress evidence, specifically a gun, seized during a traffic stop [Doc. 17].[1] After carefully considering all of the evidence and the parties' arguments, I find no constitutional violation occurred, and I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.     EVIDENCE**

At the hearing, the government offered the testimony of the sole witness, Officer Justin Headden, a patrol officer who has about two years of experience as a police officer with the Chattanooga Police Department ("CPD"). Officer Headden testified as follows.

A little after midnight on March 20, 2012, Officer Headden stopped a car because the license tag of the car displayed a 2012 sticker but a records check revealed the registration for the vehicle was last renewed in 2010. After Officer Headden initiated the traffic stop, Defendant, who was later determined to be the driver and sole occupant of the car, was slow to stop and traveled around the apartment building before eventually stopping in front of an apartment where the vehicle's registered owner, Ms. Clarissa Leath, lived. Two other CPD officers were involved in the stop, Officers Campbell and Finley, but none of the three patrol cars had video equipment to record the stop.

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 18]. The government filed a response in opposition to the motion [Doc. 20]. An evidentiary hearing was held on the fully-briefed motion December 19, 2012.

When Officer Headden approached the driver's side window of the stopped car, he recognized Defendant, knew Defendant had a felony conviction, knew Defendant had a suspended driver's license, and believed there was an order of protection preventing Defendant from being at the apartment of, or having any contact with, Ms. Leath as the result of a pending domestic violence charge. When asked how he knew these things, Officer Headden explained that a month or two before the stop he received a "tip" from "a neighbor" of Defendant stating Defendant had a gun. As part of his investigation into the tip, Officer Headden ran a criminal history on Defendant and learned Defendant had felony convictions, was named in the order of protection, and had a suspended driver's license. Officer Headden also looked at a photograph of Defendant. Officer Headden probably made hundreds of traffic stops between looking at Defendant's criminal history and the March 20 incident at issue, but he remembered Defendant's history and photograph and had previously attempted to make contact with Defendant in the area of Ms. Leath's apartment to no avail.

Upon approach, Officer Headden asked for Defendant's driver's license and name. Defendant gave a false name and stated he did not have a license. Officer Headden got Defendant out of the parked car and, because he knew Defendant gave a false name, he asked Defendant for his real name. Officer Headden had no prior contact with Defendant before the stop, but noted he has distinctive tattoos on his neck and face. Defendant admitted his real name and also admitted he knew he was not supposed to be at Ms. Leath's apartment complex due to the order of protection.

Officer Headden initially testified he did not handcuff Defendant until after the discussion noted above. When confronted with his earlier testimony at the preliminary hearing in state court, however, Officer Headden agreed his testimony in that proceeding was based on a more accurate

2

recall of events since it was closer in time to the stop. Officer Headden further agreed he had actually placed Defendant in handcuffs and patted him down as soon as Defendant got out of the car based on his prior testimony. Officer Headden said he put Defendant in handcuffs because he suspected Defendant was driving on a revoked license, he suspected Defendant was at the apartment complex in violation of an order of protection, and Defendant had not immediately pulled to a stop. Officer Headden admitted he had never seen Defendant's conditions of release/bond on the domestic violence charge or the order of protection and did not know what they were, but he generally believes orders of protection prevent contact with the victim in any way or possession of a firearm.

Officer Headden was in the process of placing Defendant in the patrol car when Officer Finley peered through the window into the front passenger area of the car and saw the butt of a firearm sticking out from underneath the front passenger seat. Officer Finley yelled gun. Officer Headden finished putting Defendant into the patrol car, and then also viewed the gun through the passenger side window from outside the car. Although it was night, the area was well lit and the gun butt was clearly visible. The gun was recovered and determined to have a bullet in the chamber. The gun was then unloaded for safety reasons.

Office Headden then read Defendant his rights. Defendant said he did not know the gun was in the car and he did not know whose gun it was.

The arrest report contains the following summary of the events at issue:

> At 0011 on 3-20-2012, police observed the vehicle in motion in the 4400 block of Delashmitt Road. Police ran TN Tag 446JTL who came back as expired on 09/30/2010 but had a 2012 decal sticker on the tag. Police initiated a traffic stop at 4405 Delashmitt Road at which time the defendant was very slow to stop but finally stopped in front of Apt #6. Police made contact with the defendant who is known to have a suspended license and also have a conditions of release on him to stay away from the victim in Apt #6 due to a

3

> domestic violence charge. The defendant was also driving the victim's car and admitted to police he was coming to see the victim in her apartment. The defendant was taken into custody at this time for the violations. Search incident to arrest police observed a Glock 23 laying in plain view in the passenger floorboard. Police secured the gun which was found with one round in the chamber and 4 rounds in the magazine. The defendant is also on active parole and has possible parole violation warrant through Clarksville, TN. The defendant was transported to Hamilton County Jail without incident.

[Doc. 17-1] (quoted verbatim).

Defendant is charged in a one-count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) [Doc. 3].

## II. ANALYSIS

Defendant does not dispute Officer Headden received a tip and ran a criminal history on Defendant a month or two before his March 20 encounter with Defendant. Instead, Defendant contends it is not credible that Officer Headden immediately recognized Defendant and remembered Defendant was a felon. Citing to *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993), Defendant appears to acknowledge that where contraband is left in open view and observed by police from a lawful vantage point, there is neither an invasion of privacy nor a search under the Fourth Amendment. Defendant argues, however, the incriminating character of the gun was not immediately apparent under *United States v. Garcia*, 496 F.3d 495 (6th Cir. 2007), because when the officers saw the gun they did not know Defendant's status as a prohibited person due to his prior felony convictions, they just knew he had a pending domestic violence *charge* as noted in the arrest report. Defendant also asserts the car was lawfully parked at its owner's residence and not subject to an inventory search so the inevitable discovery doctrine is not at issue. Finally, Defendant argues that even if the incriminating character of the gun was immediately apparent, which he denies,

4

suppression is appropriate because the proper course of action was to obtain a search warrant under the circumstances.[2]

The exclusionary rule prohibits using the fruits of an unlawful search or seizure as tangible evidence in a criminal case, *see New York v. Harris*, 495 U.S. 14, 19 (1990), in order to deter unlawful government behavior, *United States v. Gross*, 662 F.3d 393, 401 (6th Cir. 2011). Use of the exclusionary rule, however, assumes an underlying illegal search or seizure. Here, there was none.

Under the plain view doctrine, law enforcement can seize evidence in plain view without first obtaining a warrant under certain circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971); *Garcia*, 496 F.3d at 508. For the plain view doctrine to apply, four factors must be satisfied: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *Horton v. California*, 496 U.S. 128, 136-37 (1990); *Garcia*, 496 F.3d at 508. Defendant concedes the first two factors are met in this case, but contends neither of the final two factors are met. The final two factors are addressed in

---

[2] The arrest report contains no mention of Defendant's felony record and instead states, "Search incident to arrest police observed a Glock .23 laying in plain view in the passenger floorboard." Thus, Defendant initially contended he was arrested on traffic charges, the police had no reason to believe the stopped car would contain evidence related to his alleged traffic offenses, and he was in custody in the patrol car when the gun was found in a search incident to arrest in violation of *Arizona v. Gant*, 556 U.S. 332 (2009). After hearing the evidence, however, during argument the parties conceded the gun was viewed initially from outside of the vehicle and was not first observed during a search incident to arrest as reflected in the arrest report. While it is somewhat troubling that the arrest report speaks of a search incident to arrest and such a mistake could possibly weigh against Officer Headden's credibility in some circumstances, Officer Headden was not questioned about why the arrest report claims the search was incident to an arrest. As it is undisputed the gun was not located during a search incident to arrest, it is not necessary to address this aspect of Defendant's motion further.

5

turn below.

### A. The Object's Incriminating Nature Must Be Immediately Apparent

The determinative question is whether the gun's incriminating nature was immediately apparent. If Officer Headden knew Defendant was a convicted felon, as he claims, then the criminality of the firearm was immediately apparent. *See Horton*, 496 U.S. at 134-35; *United States v. Frederick*, 152 F. App'x 470, 474 (6th Cir. 2005) (citing *United States v. Santiago*, 410 F.3d 193, 201 (5th Cir. 2005) ("[B]ecause the deputies were also aware that Santiago had prior criminal convictions, the incriminating character of the firearm was immediately apparent.")).

I **FIND** Officer Headden's testimony that he knew Defendant had felony convictions to be credible. Although it had been some time since Officer Headden had run the criminal history on Defendant, he had been on the lookout for Defendant and had attempted to make contact with him in the area. Defendant has some distinctive facial and neck tattoos that could easily make him memorable. Defendant offered no testimony to discredit Officer Headden's testimony about, or memory regarding, Defendant's appearance or criminal record. It is entirely credible that Officer Headden would remember Defendant had felony convictions if he remembered Defendant well enough to immediately question the false name Defendant originally gave Officer Headden.

In addition, when Officer Headden was confronted with a discrepancy in the sequence of events concerning handcuffing Defendant based on his prior testimony in state court, Officer Headden quickly acknowledged his prior testimony was closer in time to, and therefore more accurate on, the sequence of events. No evidence was introduced, however, that the prior state testimony would discredit Officer Headden on the details of knowing Defendant's felony convictions.

6

Under these circumstances, I **FIND** the government has met its burden of proof to show Officer Headden was aware Defendant had prior criminal convictions, making the incriminating character of the firearm immediately apparent.

### B. The Officer Must Have A Right of Access to the Object

Turning to the final factor, Defendant seems to argue the police should have obtained a warrant after seeing the gun in plain view before seizing the weapon from the car. The law, however, does not require a warrant under the circumstances at hand. "The 'plain-view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable . . . [i]f an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy [but] would obviously invade the owner's possessory interest. If 'plain view' justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches." *Horton*, 496 U.S. at 133-34 (citations omitted).

Most applicable to the circumstances in the instant case is "where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." *Id.* at 135 (citations omitted). Beyond the factor referenced above that the incriminating character of the object be immediately apparent, the officer "must . . . be lawfully located in a place from which the object can be plainly seen [and] he or she must also have a lawful right of access to the object itself." *Id.* at 137. It is not unconstitutional for officers to look through the window of a vehicle. *See United States v. Weatherspoon*, 82 F.3d 697, 699 (6th Cir. 1996) (citing *Texas v. Brown*, 460 U.S. 730, 740 (1983)). Moreover, "[o]nce the officer saw the barrel of a gun sticking out from under the seat . . . it was not unreasonable for the officer to seize the weapon

7

without a warrant" because the officer knew the possession of the firearm in that case was at least in violation of a state statute. *Id.*

The firearm was in plain view through the window of the vehicle and, as found above, the incriminating nature of the firearm was immediately apparent to Officer Headden. Officer Headden was lawfully in the area with the vehicle and had a lawful right of access to the firearm because of its criminal nature; therefore, discovery and seizure of the weapon without a warrant pursuant to the plain view doctrine was not in violation of Fourth Amendment principles.

## III. CONCLUSION

Accordingly, I **RECOMMEND**[3] that Defendant's motion to suppress [Doc. 17] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).